Filed 8/4/26  P. v. Segura CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B343766 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA160533) |
| v. | |
| RICARDO ZUNIGA SEGURA, | |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Los Angeles County, Tammy Chung Ryu, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie C. Brenan and Stefanie Yee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In February 2024, the district attorney charged Ricardo Zuniga Segura with several sexual offenses against J.E. and G.P. At the time of the offenses, J.E. and G.P. were minors, and each delayed to some degree in reporting the crimes. At trial, the prosecution presented expert testimony concerning Child Sexual Abuse Accommodation Syndrome (CSAAS). "When a victim's credibility is placed at issue due to 'paradoxical behavior, including a delay in reporting,' CSAAS testimony is admissible to disabuse a jury of misconceptions about how a child reacts to molestation. [Citations.]" (*People v. Flores* (2024) 101 Cal.App.5th 438, 456 (*Flores*).) Zuniga Segura did not object to admission of the CSAAS expert testimony at trial. Nor did he object to the court's instruction to the jury, modeled on CALCRIM No. 1193, concerning the permissible uses of the CSAAS testimony. The jury convicted Zuniga Segura of four of the seven counts charged, and the court sentenced him to an aggregate term of 65 years to life in prison.

Zuniga Segura now asks us to reverse his convictions. He contends the court abused its discretion in admitting the CSAAS testimony because (1) courts in other jurisdictions have disapproved such evidence as "inherently unreliable," (2) much of the testimony was irrelevant, and (3) the testimony was unduly prejudicial. He further contends that CALCRIM No. 1193 incorrectly instructs jurors that they may treat CSAAS testimony as evidence that a victim's allegations of sexual abuse are true.

But California courts have rejected similar challenges to the reliability of CSAAS evidence, and the record does not support Zuniga Segura's claims that the CSAAS expert provided irrelevant or unduly prejudicial testimony. California courts likewise consistently have rejected the challenge to CALCRIM No. 1193 that Zuniga Segura raises here.

Accordingly, we affirm.[1]

## FACTUAL SUMMARY AND PROCEDURAL HISTORY

We summarize only the facts and procedural history relevant to our resolution of this appeal.

In February 2024, the district attorney filed an information charging Zuniga Segura with four counts of sexual offenses against J.E.: sexual intercourse or sodomy with a child 10 years old or younger (Pen. Code,[2] § 288.7, subd. (a)) (counts 1 and 2), oral copulation or sexual penetration with a child 10 years old or younger (§ 288.7, subd. (b)) (count 3), and lewd act with a child under age 14 (§ 288, subd. (a)) (count 4). The information also charged Zuniga Segura with three offenses against G.P.: oral copulation or sexual penetration with a child 10 years old or younger (§ 288.7, subd. (b)) (count 5), forcible lewd act upon a child under age 14 (§ 288, subd. (b)(1)) (count 6), and kidnapping to commit another crime (§ 209, subd. (b)(1)) (count 7).

At the December 2024 trial, Zuniga Segura challenged the credibility of the testimony J.E. and G.P. provided against him. He questioned the timing of each child's disclosure of the crimes, highlighted inconsistencies in their descriptions of certain details concerning the abuse, and argued their memories were inaccurate or tainted because children are suggestible.

To counter these challenges to J.E.'s and G.P.'s credibility, the prosecution presented expert testimony concerning CSAAS from Dr. Jayme Jones. Dr. Jones testified that CSAAS is "a model

---

[1] Because we consider and reject Zuniga Segura's claims on the merits, we need not address his contention that his trial counsel rendered ineffective assistance by failing to object to the CSAAS expert testimony and the language of CALCRIM No. 1193.

[2] Unspecified statutory references are to the Penal Code.

that was developed . . . to help people understand [the] behavior of children [who have] been sexually abused by people they know that didn't follow expectations." She explained that "[t]he model is broken down into three parts": (1) secrecy and helplessness, (2) accommodation, and (3) delayed disclosure. She opined that "the secrecy and helplessness set[ ]up a situation where it's difficult for children to disclose abuse," and children therefore "accommodat[e]," i.e., "tolerate ongoing abuse." She further testified that "most people [who] are abused as children never disclose their abuse," and that "[w]hen people do disclose . . . [,] it tends to be years, sometimes decades after the abuse occurred." Dr. Jones also provided limited testimony concerning "grooming behavior" and the nature of memory. She testified, in pertinent part: "More so children than adults[, b]ut we all have difficulty remembering some of the details of events at certain times. Most people are pretty good at remembering the main ideas, the main points. Less so the kind of peripheral details." She further testified that young children are more suggestible than adults. Finally, Dr. Jones testified that CSAAS "is not a model . . . use[d] to determine whether or not something happened," and that she was not offering any opinion about whether or not Zuniga Segura had in fact sexually abused J.E. or G.P.

The trial court instructed the jury concerning how it could use Dr. Jones's testimony, with the following modified version of CALCRIM No. 1193:

"You've heard testimony from Dr. Jayme Jones regarding [CSAAS]. [CSAAS] relates to a pattern of behavior that may be present in child sexual abuse cases. Testimony as to the accommodation syndrome is offered only to explain certain behavior of an alleged victim of child sexual abuse. Jayme Jones's testimony about [CSAAS] is not evidence that the defendant committed any

4

of the crimes charged against him. You may consider this evidence only in deciding whether or not [J.E.'s] and [G.P.'s] conduct was consistent with the conduct of someone who has been molested and in evaluating the believability of their testimony."

During closing argument, the prosecutor and defense attorney each referred to Dr. Jones's testimony. But neither argued that the jury should treat the testimony as evidence that Zuniga Segura in fact committed the alleged offenses against J.E. and G.P.

The jury returned convictions on counts 2, 3, 4, and 6,[3] and Zuniga Segura timely appealed.

## DISCUSSION

### A.  *The Court Acted Within Its Discretion In Admitting the CSAAS Testimony*

Zuniga Segura contends the court abused its discretion in admitting the CSAAS expert testimony because (1) the prosecution made no "predicate showing that CSAAS is currently reliable evidence," (2) apart from testimony on the subject of delayed disclosure, the expert's CSAAS testimony was irrelevant, and (3) the testimony was unduly prejudicial. We are not persuaded.

Zuniga Segura acknowledges that CSAAS evidence "has been routinely admitted in prosecutions for those charged with sex crimes against children." (See *People v. Lapenias* (2021) 67 Cal.App.5th 162, 171 (*Lapenias*) [noting that "it is well established in California law [that] CSAAS evidence is relevant for the limited purpose of evaluating the credibility of an alleged child victim of sexual abuse" and collecting cases]; see *People v. Brown*

---

[3] The jury could not reach a verdict on counts 1 and 7, and the court declared a mistrial as to those counts. The court had dismissed count 5 prior to trial.

(2004) 33 Cal.4th 892, 906 [discussing with approval admissibility of expert testimony concerning the behavior of child victims of sexual abuse]; *People v. McAlpin* (1991) 53 Cal.3d 1289, 1299-1301 [discussing CSAAS expert testimony with approval].) He nonetheless urges that the court erred in admitting the CSAAS testimony here because there is a "robust line of cases in other jurisdictions disapproving use of CSAAS evidence as inherently unreliable"—most notably the Supreme Court of New Jersey in *State v. J.L.G.* (2018) 234 N.J. 265 [190 A.3d 443]. Zuniga Segura also relies on these out-of-state authorities in arguing that CSAAS expert testimony is unnecessary because the "underlying assumption that child sexual abuse is outside the ken of common experience is sadly untrue."

But in *People v. Munch* (2020) 52 Cal.App.5th 464 (*Munch*), Division Six of this court rejected a virtually identical challenge to the reliability of CSAAS evidence. (*Id.* at p. 470 [concluding the New Jersey Supreme Court's decision in *J.L.G.* "involves an aberrant view of CSAAS derived from a contested hearing where four experts testified"].) And in *Lapenias*, *supra*, Division Three of the Fourth Appellate District rejected the argument that " 'CSAAS testimony is no longer necessary because the public no longer harbors misconceptions about the behavior of sexually abused children.' " (*Lapenias*, *supra*, 67 Cal.App.5th at p. 172; see *Munch*, *supra*, at p. 469 [" ' "[m]ost jurors would not be aware, in their everyday experiences, of how sexually abused children might respond to abuse" ' "].) We find the analysis in *Munch* and *Lapenias* persuasive, and we therefore reject Zuniga Segura's challenge to the general use of CSAAS expert testimony.

We likewise reject Zuniga Segura's argument that the court abused its discretion by permitting Dr. Jones to testify concerning aspects of the CSAAS model other than delayed disclosure. Zuniga

6

Segura contends delayed disclosure was the sole component of the model relevant to the case. But Dr. Jones's limited testimony on other parts of the model (i.e., secrecy, helplessness, and accommodation) related directly to her explanation of delayed disclosure: She testified, in pertinent part, that secrecy and helplessness "set[ ] up a situation where it's difficult for children to disclose abuse," resulting in accommodation and delayed disclosure.

Finally, we are unpersuaded by Zuniga Segura's argument that the CSAAS testimony was unduly prejudicial because, in closing argument, the prosecutor cited the testimony as evidence that the alleged abuse in fact occurred. Zuniga Segura urges that a prosecutor cannot invite the jury "to engage in the leap from: (1) many victims of sexual abuse do not disclose the abuse because they hold the abuser in high esteem; (2) the witness failed to disclose the sexual abuse; (3) the witness exhibits the same behavior as a class of actual victims of sexual abuse; therefore, (4) the witness was in fact sexually abused." (*People v. Clotfelter* (2021) 65 Cal.App.5th 30, 64.) And he contends the prosecutor encouraged the jury to make such a leap when she argued in closing that: nondisclosure of sexual abuse is common; the "vast majority" of abusers have a relationship with the victim; children, including the victim J.E., do not understand sexual abuse; a child's ability to recall and disclose abuse depends on the child's comfort in a particular setting; and it is normal for a victim to remember only "the main event," rather than the peripheral details of a traumatic incident. But these arguments did not invite the jury to make an impermissible inferential leap from the CSAAS model to guilt. Rather, the prosecutor's arguments merely reminded the jury— consistent with long-standing California law governing CSAAS evidence—that " 'paradoxical behavior' " by a victim, including

7

delayed disclosure, is not inconsistent with sexual abuse. (*Flores*, *supra*, 101 Cal.App.5th at p. 456.)

We therefore find no abuse of discretion in the court's admission of the CSAAS expert testimony.

### B.     *Zuniga Segura Fails To Demonstrate Instructional Error*

Zuniga Segura's challenge to CALCRIM No. 1193 likewise fails. He contends the last clause of the instruction—which provides that jurors may consider CSAAS evidence "in evaluating the believability" of the alleged victims—permits jurors to treat CSAAS testimony as evidence that the victims' allegations of sexual abuse are in fact true.

But California appellate courts, including the court in *Munch*, *supra*, consistently have rejected this argument: " 'The purpose of CSAAS is to understand a child's reactions when they have been abused. [¶] A reasonable juror would understand CALCRIM No. 1193 to mean that the jury can use [the expert's] testimony to conclude that [the child's] behavior does not mean she lied when she said she was abused. The jury also would understand it cannot use [the expert's] testimony to conclude [the child] was, in fact, molested. *The CSAAS evidence simply neutralizes the victim's apparently self-impeaching behavior*. Thus, under CALCRIM No. 1193, a juror who believes [the expert's] testimony will find both that [the child's] apparently self-impeaching behavior does not affect her believability one way or the other, and that the CSAAS evidence does not show she had been molested. There is no conflict in the instruction.' [Citation.]" (*Munch*, *supra*, 52 Cal.App.5th at p. 474, quoting *People v. Gonzales* (2017) 16 Cal.App.5th 494, 504; accord, *People v. Page* (2025) 114 Cal.App.5th 1022, 1030 [observing that "[w]e are not the first appellate court to reject the argument that CALCRIM No. 1193 impermissibly permits jurors to consider

CSAAS testimony as evidence of guilt" and collecting cases].) We follow these courts and conclude that Zuniga Segura's challenge to the language of CALCRIM No. 1193 is unavailing.

The two authorities on which Zuniga Segura relies—*People v. Housley* (1992) 6 Cal.App.4th 947 and *People v. Bowker* (1988) 203 Cal.App.3d 385—do not alter our conclusion. These cases merely reiterate that CSAAS testimony "only may be used to disabuse the jury of commonly held misconceptions regarding the behavior of abuse victims, and may not be used to corroborate the victim's claims of abuse." (*Housley*, *supra*, at p. 957, citing *Bowker*, *supra*, at p. 394.) And the version of CALCRIM No. 1193 at issue here, adopted decades after the decisions in *Housley* and *Bowker*, instructs expressly that CSAAS testimony "is not evidence that the defendant committed any of the crimes charged against him."

Accordingly, we affirm.[4]

---

[4] Because we find no error in the court's admission of the CSAAS evidence or use of CALCRIM No. 1193, we need not address Zuniga Segura's arguments concerning the prejudicial effect of any purported errors.

9

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED</u>.

ROTHSCHILD, P. J.

We concur:

WEINGART, J.

M. KIM, J.